IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DANIEL E. WILKINS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:14-CV-585 |
| ) | |
| SUPERINTENDENT, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

This matter is before the Court on the Amended Petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus filed by Daniel E. Wilkins, a pro se prisoner, on May 28, 2014. For the reasons set forth below, the Court **DENIES** the amended habeas corpus petition, **DENIES** a certificate of appealability, and **DIRECTS** the clerk to close this case.

BACKGROUND

Daniel E. Wilkins is challenging his convictions for robbery, criminal confinement, and unlawful possession of a firearm by a serious violent felon. He was sentenced to an aggregate term of 30

years on March 24, 2008, by the Allen Superior Court under cause number 02D04-0707-FB-98.

Wilkins filed a direct appeal. The Court of Appeals of Indiana affirmed in *Wilkins v. State*, 901 N.E.2d 535 (Ind. Ct. App. 2009), DE 17-7. The Indiana Supreme Court denied transfer. DE 17-3 at 2-3. The Court of Appeals of Indiana affirmed the denial of his post-conviction relief petition in *Wilkins v. State*, 2013 WL 5777074, (Ind. Ct. App. 2013), DE 17-12. The Indiana Supreme Court denied transfer. DE 17-4 at 1. In this habeas corpus petition, Wilkins raises eleven grounds for habeas corpus relief.

DISCUSSION

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 575 U.S. \_\_, \_\_; 135 S.Ct. 1372, 1376 (2015) (quotation marks and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 575 U.S. __, __; 135 S.Ct. 1372, 1376 (2015).

(quotation marks and citations omitted).


Grounds One and Two

In Ground One, Wilkins argues that he was denied his Sixth Amendment right to a Speedy trial. The respondent argues that Ground One was not fairly presented to the State Courts. Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C.A. § 2254(b)(2).

In Ground Two, Wilkins argues that he was denied the effective assistance of counsel in connection to his speedy trial claim.

However, "[w]ithout a meritorious speedy trial claim, [he] cannot possibly demonstrate that he was prejudiced by his . . . counsel's failure to argue such a claim. As the Court noted in *Strickland*, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014) (quotation marks, brackets, and citations omitted).

Here, because Wilkins is not entitled to habeas corpus relief even under a de novo review, it is unnecessary to address any of the procedural issues in connection with Ground One and Ground Two.

> The Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, (1972), set forth the now well-established standard governing Sixth Amendment speedy trial challenges. That four-part test considers: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result.

*Ashburn v. Korte*, 761 F.3d 741, 751-752 (7th Cir. 2014) (parallel citations and quotation marks omitted). However, all four factors of the *Barker* test are not equal. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Thus, "the length of the delay operates

as a trigger — a delay longer than one year triggers the full *Barker* analysis." *O'Quinn v. Spiller*, 806 F.3d 974, 977 (7th Cir. 2015). Conversely, a delay of less than one year ends the analysis.

Here, Wilkins was charged on July 6, 2007, and his jury trial was held on February 20 and 21, 2008. *Wilkins v. State*, 901 N.E.2d 535, 536-37 (Ind. Ct. App. 2009). DE 17-7 at 2-3. This was less than an eight month delay. Because an eight month delay is not presumptively prejudicial, a full *Barker* analysis is not necessary, and Wilkins has not established a Sixth Amendment violation. Therefore neither Ground One nor Ground Two is a basis for habeas corpus relief.

### Ground Three

Wilkins argues that his trial counsel was ineffective because he prevented Wilkins from waiving a jury and demanding a bench trial. However, "there is no federally recognized right to a criminal trial before a judge sitting alone." *United States v. Clark*, 943 F.2d 775, 784 (7th Cir. 1991) (ellipsis omitted) *quoting Singer v. United States*, 380 U.S. 24, 34 (1965). Because Wilkins could not have a meritorious bench trial demand claim, he "cannot possibly demonstrate that he was prejudiced by his . . . counsel's failure" to demand a bench trial. *Ashburn v. Korte*, 761 F.3d 741,

751 (7th Cir. 2014). Therefore Ground Three is not a basis for habeas corpus relief.

### Ground Four

Wilkins argues that his trial counsel was ineffective because he incorrectly advised him that the maximum sentence possible was 50 years. Wilkins argues that if he had known that the maximum sentence was only 30 years, he might have taken the State's 16 year guilty plea offer. However, as the Court of Appeals of Indiana explained, "fifty years *was* the maximum penalty he faced for the charges against him." *Wilkins v. State*, 2013 WL 5777074, at *3 (Ind. Ct. App. 2013), DE 17-12 at 7 (emphasis in original). A misstatement by the trial judge at sentencing did not change that fact. Moreover, even if the maximum sentence had been shorter than he was advised, such an error would not have made it more likely that he would have decided to plead guilty. Rather it would have made it less likely. Because his trial counsel was not wrong and Wilkins would not have been prejudiced even if he had been, Ground Four presents no basis for habeas corpus relief.

### Ground Five

Wilkins argues that his trial counsel was ineffective because he did not object to the testimony of two eye witnesses who

identified him at trial. He argues that "[i]n determining whether an identification is reliable despite suggestive pre-trial identification procedures, courts" must apply a five factor test. *Cossel v. Miller*, 229 F.3d 649, 655 (7th Cir. 2000). He argues that because the State could not meet that test, the objection would have been sustained and the testimony excluded. However, "*Cossel* is readily distinguishable [because] there is no allegation of any prior impermissibly suggestive identification procedure here." *United States v. Miller*, 795 F.3d 619, 628 (7th Cir. 2015). As such, it was not unreasonable for the Court of Appeals of Indiana to have found that "Wilkins cannot prove either substandard performance or prejudice." *Wilkins v. State*, 2013 WL 5777074, at *5 (Ind. Ct. App. 2013), DE 17-12 at 9. Therefore Ground Five presents no basis for habeas corpus relief.

Ground Six

Wilkins argues that his trial counsel was ineffective because he did not object to fingerprint testimony based on the Simultaneous Latent Print Impressions method. He argues that *Commonwealth v. Patterson*, 445 Mass. 626 (2005), held that Simultaneous Latent Print Impressions is a questionable method for analyzing fingerprints. The court in *Patterson* explained that,

> Such testimony is based on the theory that once a group of latent impressions are identified as simultaneous impressions, an otherwise unacceptably small number of similarities between each of the impressions and its allegedly corresponding fully inked fingerprint can form the basis for a collective determination as to whether the entire group of latent impressions matches a corresponding group of full fingerprints.

*Id.* at 645, *overruled on other grounds by Com. v.* Britt, 465 Mass. 87, 987 N.E.2d 558 (2013).

However, no such testimony was admitted during Wilkins' trial. There is no mention of using the Simultaneous Latent Print Impressions method. Eric Black testified, "In the comparison of latent fingerprint evidence, we use a scientific method called ACE-V, and that's an acronym for A-C-E dash V, and it stands for analysis, comparison, evaluation, and then verification." Trial Transcript at 299.

David Young did testify that "Three (3) fingers placed on there appear to be placed in – in – in an order that appeared to me to be a simultaneous impression, in other words close enough together that they appeared to be laid down at the same time when an item was picked up, the spacing between 'em and just the orientation of the prints appeared to be in that order." Trial Transcript at 331. He also testified that two prints were "consistent with the – another finger, a simultaneous impression." Trial Transcript at 337. However, he clearly stated that "There

was sufficient information within 'em to individually identify both prints." Trial Transcript at 339. "These were made independent of each other. I didn't need the other one to substantiate what was there, both of 'em had more than enough information for me to identify strictly on its own if the other one wasn't present." *Id*. Thus, the identification of Wilkins as the person who had left these two prints was not based on "an otherwise unacceptably small number of similarities" with multiple prints, but on a complete and independent analysis of each print. David Young testified that "I was completely confident . . . I was a hundred percent (100%) with both." Trial Transcript at 361. Based on the testimony presented at trial, there was no factual basis for an objection to the use of the Simultaneous Latent Print Impressions method because it was not used to identify any fingerprints presented during Wilkins' trial. Therefore Ground Six is not a basis for habeas corpus relief.

## Ground Seven

Wilkins argues that his trial counsel was ineffective because he did not object to the State's use of a peremptory strike of what he alleges was the only African-American juror. Here is how the Court of Appeals of Indiana addressed the claim.

If Juror 62 was the only African-American in the venire, the burden would have shifted to the State to offer a race-neutral reason as the basis for striking him. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. The following exchange occurred during voir dire:

> PROSECUTOR: All right. These three (3) questions that I asked, if you would agree to ask yourself: Do I have a doubt? Does it go to the elements? And is my doubt reasonable? Would you ask yourself those three (3) questions? And if your answer is "no", then—to any of those, I've done my job. Right? Is that fair?
>
> JUROR 63: (Responds by nodding in the affirmative.)
>
> JUROR 62: (Responds by nodding in the affirmative.)
>
> Q: And then, in fact, that your—would you return a verdict of guilty in that circumstance?
>
> JUROR 62: I really couldn't say.
>
> Q: Pardon me?
>
> JUROR 62: I couldn't say. I said I—I really couldn't say.
>
> Q: Okay. Well—well, if you don't have a doubt that goes to one of the elements then you wouldn't return a verdict of guilty?
>
> JUROR 62: I don't know.
>
> Q: Okay. Well—well, then I guess I just want to make sure that I'm under-that I'm able to hear you okay. Is it—why would that be, sir?

>       JUROR 62: I don't know, 'cause I've never been
>          on a jury trial before.

Transcript at 111–112. In the discussion that followed, the prosecutor noted that Juror 62 had filled out a questionnaire asking if there was anyone close to him that had been charged or convicted of a crime. He answered "yes". Assuming that question was answered in the affirmative, the questionnaire sought additional information. The prosecutor noted that Juror 62 had failed to provide on the questionnaire any of the details pertaining to his affirmative response. The prosecutor asked Juror 62 why he did not answer that portion of the questionnaire. Juror 62 responded that he did not remember the dates and details, but he did share that the subject of the previous arrest was his son. Upon further questioning, Juror 62 shared that his son had been convicted of burglary many years before.

>       When he exercised his peremptory strike of Juror 62, the prosecutor explained his reasoning as follows: Oh. Well then, that being the case, ma'am, I've provided a race-neutral reason. I—he—he was—when I was asking the questions, I asked him two (2) or three (3) times and he said, "I don't know, I've never been a juror before." And—and while he may have corrected it, which would support not taking him for cause, I think it's a—it's a sufficient race neutral reason for—to take it as a peremptory. *Id*. at 119. Essentially, the State sought to exclude Juror 62 because he indicated that he may not vote to convict even if he was convinced the State had established all elements necessary to achieve a conviction. The State's subsequent questioning established a possible basis for Juror 62's reluctance, i.e., Juror 62's son had been convicted of a crime. This was a sufficiently race-neutral reason to withstand a *Batson* challenge. Thus, even if an objection had been made, the trial court would not have sustained it. Therefore, Wilkins has failed to demonstrate that he was prejudiced by trial counsel's failure to raise a *Batson* challenge with respect to the exclusion of Juror 62.

*Wilkins v. State*, 2013 WL 5777074, at *5-6 (Ind. Ct. App. 2013)

(citations and quotation marks omitted), DE 17-12 at 11-13.

"When the claim at issue is one for ineffective assistance of counsel . . . federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 578 U.S. \_\_, \_\_; 2016 WL 1278478 at *2 (2016) (quotation marks omitted). Because the Court of Appeals of Indiana accurately stated the *Batson* standard and did not unreasonably apply it to the facts of this case, Ground Seven is not a basis for habeas corpus relief.

## Ground Eight

Wilkins argues that his trial counsel was ineffective because during the second phase of his bifurcated trial, he did not make an opening statement, cross-examine witnesses, object to the State's evidence, nor make a closing argument. "After Wilkins was convicted of Counts 1 & 2 the proceedings continued and the jury was instructed on count (3) which alleges that the defendant omitted the offense of unlawful possession of a firearm by an individual with a prior conviction enumerated under I.C. 35-47-4-5." DE 9-1 at 45 and DE 22 at 31. The Court of Appeals of Indiana explained that "Wilkins has failed to articulate what trial counsel would or could have said during opening and closing statements that would have had any meaningful impact on the outcome of this case. Having failed to establish prejudice, his argument with

respect to those claims is without merit." *Wilkins v. State*, 2013 WL 5777074, at *7 (Ind. Ct. App. 2013), DE 17-12 at 13. This was not an unreasonable determination. Even now in his habeas corpus filings, Wilkins has provided no explanation as to what his trial counsel could have said or done which would have resulted the exclusion of any admitted evidence or the inclusion of any additional evidence. Neither has he provided any suggestion as to what could have been said in opening or closing which would have given the jury an alternative perspective on the State's evidence. Because the State's adjudication of this claim was not unreasonable, Ground Eight is not a basis for habeas corpus relief.

Ground Nine

Wilkins argues that he was denied the effective assistance of both trial and appellate counsel because they did not preserve or raise on appeal a claim that the Information charging him with Confinement was inadequate. "An [Information] is constitutionally sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to meet, and (3) enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense." *U.S. ex rel. Ballard v.*

*Bengston*, 702 F.2d 656, 660 (7th Cir. 1983) *citing Russell v. United States*, 369 U.S. 749, 763-64 (1962).

Wilkins argues that the Information should have specifically stated where the victims were confined pursuant to Indiana Code 35-34-1-2(a)(8) which requires "stating the place of the offense as definitely as can be done if the place is of the essence of the offense . . .." However, specific location is not a part of the essence of Confinement which only requires "knowingly or intentionally confin[ing] another person without the other person's consent . . . ." Indiana Code 35-42-3-3. Moreover, even "[w]here a charging instrument may lack appropriate factual detail, additional materials such as the probable cause affidavit supporting the charging instrument may be taken into account in assessing whether a defendant has been apprised of the charges against him." *Gilliland v. State*, 979 N.E.2d 1049, 1061 (Ind. Ct. App. 2012) (quotation marks, citations, and brackets omitted). Here the Probable Cause Affidavit states that Wilkins "made all the victims go into the office bathroom and used a new pool stick to jam in the door handle to lock them in" at the Stadium Bar and Grill. Trial Record at 22. Thus, the Information was not insufficiently specific and Ground Nine is not a basis for habeas corpus relief.

Ground Ten

Wilkins argues that he was denied the effective assistance of both trial and appellate counsel because they did not preserve or raise on appeal a Double Jeopardy claim asserting that the elements of his Confinement conviction were not distinct from his Robbery conviction. The Court of Appeals of Indiana explained that

> Robbery consists of taking property "by using or threatening the use of force" or "by putting any person in fear." See Ind. Code Ann. § 35–42–5–1 (West, Westlaw current with all 2013 legislation). Criminal confinement consists of confining a person or removing them by fraud, enticement, force, or threat of force from one place to another. See I.C. § 35–42–3–3 (West, Westlaw current with all 2013 legislation). Our Supreme Court has indicated that confinement is not a lesser-included offense of robbery. *See Hopkins v. State*, 759 N.E.2d 633 (Ind. 2001). Moreover, confinement is a separate criminal act where the confinement is greater than that which is inherently necessary to rob the victim, even where the confinement is a part of the robbery. *See id*. Wilkins confined the three victims well beyond that which was necessary to carry out the robbery. He forced his victims to the restaurant's bathroom. It was not necessary to do this in order to take the restaurant's money. A double jeopardy challenge would not have succeeded, and therefore cannot be the basis of a finding of ineffective assistance of counsel. *See Wrinkles v. State*, 749 N.E.2d 1179.

*Wilkins v. State*, 2013 WL 5777074, at *7 (Ind. Ct. App. 2013), DE 17-12 at 14-15. Wilkins has not provided any explanation for why this was an unreasonable adjudication of this claim. The facts of this case show that after committing Robbery, he went on to separately commit Confinement by locking his victims in the

bathroom. Therefore Ground Ten is not a basis for habeas corpus relief.

Ground Eleven

Wilkins argues that he was denied the effective assistance of both trial and appellate counsel because they did not preserve or raise on appeal a claim that the charging Informations were not properly sworn. The Court of Appeals of Indiana explained:

> Finally, under the broad claim that his convictions violated the Fifth, Sixth, and Fourteenth Amendments, Wilkins claims, "The Charging Information for Counts 1, 2 & 3 failed to meet the requirements of Ind. Code 35-34-1-2.4(A)." Brief of Appellant at 50. He explains that the charging information was defective in that it failed to comply with Ind. Code Ann. § 35-34-1-2.4 (West, Westlaw current with all 2013 legislation), which provides that a charging information must be "verified or sworn under oath". Further, the statute provides a model affirmation clause meeting that requirement, i.e.: "I swear (affirm), under penalty of perjury as specified by IC 35-44.1-2-1, that the foregoing (the following) representations are true." We note, however, that the statute explicitly does not narrow the list of acceptable forms to only the model affirmation set out therein. Rather, it provides that "a substantially similar form" would be acceptable as well. *Id*.
> In the present case, the charging informations, in pertinent part, read as follows: "Undersigned, upon information and belief, being duly sworn upon oath, says that: On or about the thirty-first day of May, 2007, in the County of Allen and in the State of Indiana, said defendant, Daniel E. Wilkins ..."—at this point, the charging informations set out the allegations specific to the respective offenses with which he was charged. By including in the statute a provision indicating that language substantially similar to the model form would suffice, the Legislature signaled its intention not to

> create "magic words." Although it would perhaps be preferable to use the model language, the failure to do so is not fatal error. The charging informations in the present case indicate that the person signing the informations did so while "duly sworn upon oath" and that it was "[s]ubscribed and sworn to before me". Appellant's Appendix at 363 and 364, respectively. "The essential purpose of a verification is that the statements be made under penalty of perjury." *Austin v. Sanders*, 492 N.E.2d 8, 9 (Ind. 1986). I.C. § 35-34-1-2.4 prescribes a method of verification without the presence of a notary or other officer authorized to administer an oath. The rule allows verification by reciting the statutory language, or substantially similar language.
>
> To "swear" is "to take an oath." Black's Law Dictionary 1461 (7th ed. 1999). "The legal effect of an oath is to subject the person to penalties for perjury if the testimony is false." *Id*. at 1099. In Indiana, a person commits the crime of perjury when he or she "makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true[.]" Ind. Code Ann. § 35-44. 1-2-1(a)(1) (West, Westlaw current with all 2013 legislation). In the present case, the deputy prosecutor affirmed the representations contained in the charging informations were true, and did so swearing an oath to that effect. As such, the deputy prosecutor who signed the charging informations subjected himself or herself to the penalties of perjury if the sworn statement was false. Thus, although not in the form set out in I.C. § 35-34-1-2.4, the affirmation language incorporated in these charging informations was sufficient to satisfy the purpose of the requirement set out in the statute. In light of this, a legal challenge by trial or appellate counsel on the grounds that Wilkins identifies here would not have succeeded. We reiterate that counsel cannot be deemed to have rendered ineffective assistance of counsel for failure to present a meritless claim.

*Wilkins v. State*, 2013 WL 5777074, at *8 (Ind. Ct. App. 2013), DE 17-12 at 15-17. Wilkins has not provided any explanation for why this was an unreasonable adjudication of this claim. The charging

Informations were properly sworn under oath and he had no valid basis for objecting. Therefore Ground Eleven is not a basis for habeas corpus relief.

## Cumulative Prejudice

Wilkins argues that even if no individual error was sufficiently prejudicial to merit habeas corpus relief, the Court should grant him relief based on the cumulative prejudice of all of the errors combined. "[P]rejudice may be based on the cumulative effect of multiple errors. Although a specific error, standing alone, may be insufficient to undermine the court's confidence in the outcome, multiple errors together may be sufficient." Mal*one* *v. Walls*, 538 F.3d 744 (7th Cir. 2008) *quoting Hough v. Anderson*, 272 F.3d 878 (7th Cir. 2001). However, cumulative prejudice is only possible where there was more than one error. Here, Wilkins has not demonstrated that any errors occurred. Therefore there are no errors to combine.

## Evidentiary Hearing

Wilkins argues that this court should hold an evidentiary hearing before ruling on Grounds One through Eight. Nevertheless, he provides no explanation as to why a hearing is needed, nor what new evidence might be obtained during a hearing. Neither does he

provide any explanation for how he meets the requirements of 28 U.S.C. § 2254(e)(2) as required by *Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001). Therefore there is no basis for holding an evidentiary hearing in this case.

## Certificate of Appealability

Finally, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must consider whether to grant a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As previously explained, all of the grounds raised by Wilkins are meritless and none of them deserve encouragement to proceed further. Therefore Wilkins will not be granted a certificate of appealability.

CONCLUSION

For the reasons set forth above, the court **DENIES** the amended habeas corpus petition, **DENIES** a certificate of appealability, and **DIRECTS** the clerk to close this case.


DATED: April 11, 2016

**/s/RUDY LOZANO, Judge**
United State District Court